**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

CITY OF JACKSONVILLE, FLORIDA
and JEA,

     Plaintiffs,

vs.                                                                    Case No. 3:18-cv-1174-J-39JRK

MUNICIPAL ELECTRIC AUTHORITY
OF GEORGIA,

     Defendant.

_____

**PLAINTIFFS' RESPONSE TO THE UNITED STATES'**
**STATEMENT OF INTEREST IN OPPOSITION TO**
**PLAINTIFFS' MOTIONS FOR REMAND**

This declaratory judgment action should be remanded to Florida state court pursuant to the *Brillhart/Wilton* abstention doctrine. Nothing in the United States' Statement of Interest in Opposition to Plaintiffs' Motions for Remand ("Statement of Interest") contradicts the fact that this action involves complex and unsettled questions of Florida constitutional, statutory, and municipal law and Florida public policy. MEAG filed a preemptive and anticipatory lawsuit in Georgia federal court, and this case was removed on the basis of diversity jurisdiction. There are no issues of federal law raised in Plaintiffs' Amended Complaint—nor could there be, as the question of JEA's authority to enter into the PPA is uniquely a question of Florida law. The *Brillhart/Wilton* doctrine furthers federalism and comity by recognizing that state law matters should be decided in state courts. None of the cases cited by the United States suggests that a federal agency's preference for a particular litigation outcome prevents the application of the *Brillhart/Wilton* doctrine in a case in which the federal government is not a party and no questions of federal law are involved.  Instead, the Statement of Interest represents a purely outcome-driven

attempt by an executive agency to influence the forum in which the pending action will proceed. Indeed, it represents an insult to the state courts of Florida, which the United States apparently deems incapable of fairly resolving a dispute about the application of Florida law. Furthermore, as previously argued in Plaintiffs' Response to the United States' Notice of Potential Statement of Interest (Doc. 59), the United States' Statement of Interest is untimely, as this issue has been fully briefed by the parties and has been pending since November 20, 2018. Any further delay threatens substantial prejudice to Plaintiffs. Plaintiffs require judicial guidance on the validity and enforceability of the Power Purchase Agreement ("PPA"), and further delay could place JEA in the position of deciding whether to comply with an agreement that Plaintiffs contend is void or to default on its purported obligations under that agreement.

## MEMORANDUM OF LAW

The United States' Statement of Interest mischaracterizes not only the Amended Complaint and assertions made in Plaintiffs' Motions to Remand but also the nature of the *Brillhart/Wilton* abstention doctrine as it applies to federal interests. Plaintiffs' position in this declaratory judgment action has remained the same since day one: Plaintiffs seek a declaration that the PPA is *ultra vires*, void *ab initio*, and unenforceable against JEA because JEA did not have authority to enter into the PPA. The question of JEA's authority turns on the interpretation of complex and unsettled questions of Florida constitutional, statutory, and municipal law and Florida public policy. Plaintiffs originally sought relief in Florida state court and seek remand back to Florida state court based on a fundamental principle of federalism—that the only forum that can render a binding decision on unsettled questions of state law is a state court. *See, e.g.*, *Int'l Ass'n of Bridge, Structural & Ornamental Ironworkers, AFLCIO v. Blount Int'l, Ltd.*, 519 So. 2d 1009, 1012 (Fla. 2d DCA 1987) ("State courts . . . are not bound by any federal court regarding the interpretation

2

of state law."). Contrary to the United States' suggestion, neither the DOE's role in financing a portion of the Plant Vogtle project nor its stated interest in civilian nuclear power makes abstention under the *Brillhart/Wilton* doctrine inappropriate here.

### A.     The Brillhart/Wilton Abstention Doctrine Applies to This Action

The *Brillhart/Wilton* abstention doctrine applies (1) where a declaratory judgment action is filed in federal court, concerning purely state law issues and not governed by federal law, while a parallel action involving substantially the same claims and parties is pending in state court; or (2) where a declaratory judgment action is filed in state court, concerning purely state law issues and not governed by federal law, and the state court action has been removed to federal court but the plaintiff seeks remand to state court.[1] *See, e.g.*, *Brillhart v. Excess Insurance Co.*, 316 U.S. 491, 495 (1942) (parallel action in state court); *Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328, 1330-31 (11th Cir. 2005) (parallel action in state court); *Hermitage Ins. Co. v. Jack Hamilton Constr. of Cent. Florida, Inc.*, 08-CV-879-FTM-99DNF, 2009 WL 10670001, at *5 (M.D. Fla. May 12, 2009) ("Courts have found that the rationale for dismissing a declaratory judgment in light of a parallel state suit also applies to the decision whether to remand a removed declaratory judgment action where no pending state court suit is pending."); *Univ. of Georgia Athletic Ass'n, Inc. v. Fireman's Fund Ins. Co.*, 3:05-CV-94 (CDL), 2006 WL 1652482, at *2 (M.D. Ga. June 13, 2006) ("Here, there is not an identical declaratory judgment action presently pending in state court because that state action has been removed to this Court. . . . The Court finds that the rationale underlying the Eleventh Circuit's guidelines [stated in *Ameritas*] applies with equal force to the remand of a removed state court declaratory judgment action."); *see also Huth v. Hartford Ins. Co.*

---

[1] While the United States represents that it is not taking a position on whether *Brillhart/Wilton* applies to a removed state court action, its pretense of neutrality is belied by its attempts to portray this dispute as one involving two pending parallel federal cases.

*of the Midwest*, 298 F.3d 800, 803 (9th Cir. 2002); *Teva Pharm., USA, Inc. v. Am. Motorists Ins. Co.*, No. 4:08CV477 CDP, 2008 WL 4596186, at *2 (E.D. Mo. Oct. 14, 2008); *cf. Wilton v. Seven Falls Co.*, 515 U.S. 277, 290 (1995) (hypothesizing the "outer boundaries" of *Brillhart/Wilton* discretion as "cases in which there are no parallel state proceedings").

The United States and DOE's stated interests do not prevent the application of the *Brillhart/Wilton* doctrine. Their stated interests include: (1) the possibility that DOE *could* be obligated to make payment on its guarantee of loans made to SPVJ by the Federal Financing Bank if the PPA is voided; (2) that DOE's contracted-for rights to collateral securing DOE's guarantees of loans made to SPVJ would be impaired if the contract is voided; and (3) the possibility that if rescission of the PPA leads by a domino effect to the cancellation of the entire project, (i) DOE *could* be obligated to make payment on its guarantees of loans made to the other co-owners by the Federal Financing Bank,[2] and (ii) the United States' policy interests in fuel diversity and civilian nuclear power *could* be impacted. Plaintiffs do not dispute that these purely outcome-based interests exist. These interests, however, are tangential to the *Brillhart/Wilton* analysis and should not be given greater weight than the State of Florida's interests in determining the scope of authority of a Florida municipal utility under Florida law—especially when the United States is not a party to this action and no questions of federal law are implicated. DOE chose to make a passive investment in a project being undertaken by multiple public and private entities. It should be no surprise that if a dispute should arise about an entity's authority to participate in the project, the predominance of state-law issues would warrant a state forum.

---

[2] The United States' Statement of Interest does not tell the full story with respect to the likelihood that it will be called upon to make any payments under its loan guarantee. Rather, as the result of a side term sheet between Georgia Power Co. and MEAG in September 2018 in connection with the Plant Vogtle co-owners' vote to continue the project in light of additional billions of dollars in cost overruns, Georgia Power Co. agreed to make payments to MEAG SPVJ in the event of a "JEA Default." *See* "Term Sheet Applicable to MEAG relative to MEAG SPVJ" attached hereto as Exhibit 1.

The United States asserts that "[c]ase law supports the conclusion that, when exercising discretion, cases manifesting strong federal interests should be decided by federal courts." (Doc. 63 at 10). But the cases cited by the United States are easily distinguishable and do not stand for the proposition that federal interests, not accompanied by the federal government's involvement as a party to the action or the existence of questions of federal law, trump a state's interest in resolving important and unsettled questions of state law.

In *United States v. Commonwealth of Pennsylvania, Department of Environmental Resources*, 923 F.2d 1071, 1072 (3d Cir. 1991), the Third Circuit reversed an order dismissing a federal declaratory judgment action in favor of state court adjudication, but it did not do so simply because federal interests were involved. Rather, the Third Circuit emphasized (1) that the United States was a party to the lawsuit and brought the federal declaratory judgment action pursuant to 28 U.S.C. § 1345 ("United States as Plaintiff"), noting that the United States has a "compelling interest" in seeking access to its forum of choice, the federal court; and (2) that "affirmative questions of federal statutory interpretation do create federal interests sufficient for the exercise of jurisdiction," and the action involved the issue of the United States' sovereign immunity under federal statutes. *See id.* at 1078-79. Clearly, the Third Circuit's holding is inapposite here, as the United States is not a party (and, thus, has no compelling interest in access to its forum of choice under 28 U.S.C. § 1345), and no "affirmative questions of federal statutory interpretation" are involved to create a compelling federal interest.

In *Mitcheson v. Harris*, 955 F.2d 235 (4th Cir. 1992), the Fourth Circuit noted that "[t]he Supreme Court has recognized the desirability of having state courts interpret questions of state law." *Id.* at 238. It highlighted the "state interest in having state courts resolve difficult questions of state law . . . in the practice of certification, . . . and in the various forms of federal abstention."

5

*Id.* (citations removed). In determining whether the district court should retain jurisdiction over a declaratory judgment action, the Fourth Circuit explained that the "state interest . . . is particularly strong in this case [because] [a]ll questions in the declaratory action depend solely upon state law." *Id.* The court contrasted the case before it to another Fourth Circuit declaratory action in which an interpretation of *federal* law was at issue, then went on to explain that "[a]bsent a strong countervailing federal interest, the federal court" should abstain from hearing a case interpreting state law. *Id.* Thus, while the Fourth Circuit mentioned "federal interests," it cited only a case in which interpretation of a federal statute was at issue as an example of such interests. *See id.*

Lastly, in *Great West Casualty Co. v. McGuire*, No. C05-274C, 2005 WL 1804522 (W.D. Wash. July 28, 2005), the district court, citing to *Huth*, 298 F.3d 800, first noted that "the absence of a pending parallel state proceeding does not preclude a district court from declining discretionary jurisdiction." *Id.* at *1. In declining to exercise jurisdiction, the district court explained that the "case requires solely the application of state insurance law. There is no federal interest at stake." *Id.* As in *Mitcheson*, the court generally referred to federal interests but was doing so in the specific context of considering whether state or federal law applied to the dispute.

The United States has not cited a single case in which a federal court decided to retain jurisdiction over a declaratory judgment action because of the possibility that some federal interest could be affected by a clarification of state law, even though, as here, the federal government was not a party to the dispute and the dispute raised only questions of state law. Indeed, the Eleventh Circuit's balancing factors set forth in *Ameritas*, 411 F.3d 1328—a case in which the United States was not a party and only state law issues were raised—include factors concerning the relationship between the state and federal judicial systems and whether a case involves state or federal law, but

6

do not appear to attach any importance to the types of federal interests raised by the United States here.

Moreover, the United States' interests will remain exactly the same regardless of the forum in which this dispute is heard. State courts are well equipped to consider disputes of this kind between public entities of different states. *See, e.g.*, *Vt. Dep't of Pub. Serv. v. Mass. Mun. Wholesale Elec. Co.*, 151 Vt. 73 (1988).

Reduced to its essence, the United States' concern is that a Florida state court might agree with Plaintiffs that the PPA violates the scope of JEA's authority under Florida law.  The United States appears to believe a federal court will provide a friendlier forum for its preferred position. In the absence of any semblance of an argument that this case involves any issue of federal law, the United States' position amounts to little more than innuendo regarding the supposed partiality of Florida state courts. This Court should refuse to endorse this aspersion against courts of equal dignity under our federalist system.

Further, contrary to the United States' suggestion, neither JEA nor the City of Jacksonville ("City") mischaracterized the nature of this action or strategically omitted information in their motions to remand. Plaintiffs have simply maintained—correctly—that this action does not involve any issues of federal law. (*See, e.g.*, Doc. 28 at 9, 12, 15.)

Unsurprisingly, the United States does not identify any federal legal issue raised in this action. Instead, it relies on selective quotations from the City's motion to create the false impression that Plaintiffs have mischaracterized the nature of this action. The relevant statements from the City's motion, in context, are as follows:

- "Whether a local government has acted in accordance with the powers given to it and the limitations placed upon it by the people through its founding documents is a matter of local concern. Conversely, no federal interests, important or otherwise, are implicated when questions of this nature are raised." (Doc. 29 at 2).

- "[I]t cannot be overstated that the enforcement and interpretation of the [JEA] Charter is inherently and uniquely local in character and the federal system simply has no interest in these unique, important, and complex matters involving the core organic laws of our local government." (*Id.* at 9-10).

Contrary to the United States' insinuation, Plaintiffs have never asserted that no federal agency is interested in the outcome of this litigation. Plaintiffs have no reason to make such an assertion, since any federal interests involved are tangential to the *Brillhart/Wilton* analysis anyway. Instead, the City was referring to the uncontroversial notion that federal questions and interests are not implicated when clarifying the scope of a local governmental entity's authority under municipal law and determining whether such entity acted in accordance with municipal law.

## B.    The Statement of Interest Is Untimely

As argued in Plaintiffs' Response to the United States' Notice of Potential Statement of Interest, the Notice was untimely, and this Statement of Interest is even more so. (Doc. 59 at 3). While there is no formal deadline for the United States to file a Statement of Interest, consideration of a Statement of Interest is discretionary, and courts have declined to consider a Statement of Interest when it was untimely filed. *See, e.g.*, *LSP Transmission Holdings, LLC v. Lange*, 329 F. Supp. 3d 695, 703 (D. Minn. 2018) ("It is solely within the Court's discretion to permit or deny a statement of interest. . . . In exercising that discretion, the Court can consider whether the information is timely, useful, or otherwise necessary to the administration of justice."); *see also U.S. ex rel. Gudur v. Deloitte Consulting LLP*, 512 F. Supp. 2d 920, 927–28 (S.D. Tex. 2007), *aff'd sub nom. U.S. ex rel. Gudur v. Deloitte & Touche*, No. 07-20414, 2008 WL 3244000 (5th Cir. Aug. 7, 2008) (filing Statement of Interest one week after the court had closed briefing on motions for summary judgment was "neither timely nor useful").

Here, Plaintiffs' motions to remand have been ripe since November 20, 2018. This additional briefing comes two and a half months later. The delay associated with a second, and

8

wholly unnecessary, round of briefing on those motions threatens substantial prejudice to Plaintiffs. Plaintiffs need judicial guidance on the validity and enforceability of the PPA before JEA is put in the position of deciding whether to comply with a PPA that Plaintiffs contend is void and unenforceable or be forced into default. Rather than putting JEA in that unenviable position, this Court should decline to consider the United States' Statement of Interest as untimely filed.

## CONCLUSION

For the reasons set forth herein, this Court can and should grant Plaintiffs' motions to remand pursuant to the *Brillhart/Wilton* doctrine. A remand would allow the Florida courts to render a binding decision on the complex and unsettled questions of Florida law raised in Plaintiffs' Amended Complaint. Nothing in the United States' Statement of Interest supports a contrary outcome.

#63373333_v6

Respectfully submitted this 20th day of February, 2019.

HOLLAND & KNIGHT LLP

By: /s/ J. Allen Maines

George E. Schulz, Jr.
Florida Bar No. 169507
Buddy.schulz@hklaw.com
Wanda.adair@hklaw.com
Lawrence J. Hamilton II
Florida Bar No. 335691
Larry.hamilton@hklaw.com
Kathleen.griffith@hklaw.com
Joshua H. Roberts
Florida Bar No. 42029
Josh.Roberts@hklaw.com
Cathy.luke@hklaw.com
Michael M. Gropper
Florida Bar No. 105959
Michael.gropper@hklaw.com
Lynette.matthison@hklaw.com
50 N. Laura Street, Suite 3900
Jacksonville, FL 32202
(904) 353-2000
Fax:  (904) 358-1872

J. Allen Maines
Florida Bar No. 226270
Allen.maines@hklaw.com
Jacquelyn Thomas Watts
Florida Bar No. 112761
Jacquelyn.watts@hklaw.com
1180 West Peachtree Street NW
Atlanta, GA 30309

OFFICE OF GENERAL COUNSEL
JEA CHIEF LEGAL OFFICER
Jody Brooks
Florida Bar No. 480355
broojl@jea.com
21 W Church Street (T-16)
Jacksonville, FL 32202
(904) 630-1720

#63373333_v6

BEDELL, DITTMAR, DeVAULT,
PILLANS & COXE, P.A.

Henry M. Coxe, III
Florida Bar No. 155193
hmc@bedellfirm.com
Michael E. Lockamy
Florida Bar No. 69626
mel@bedellfirm.com
John G. Woodlee
Florida Bar No. 0100990
jgw@bedellfirm.com
The Bedell Building
101 East Adams Street
Jacksonville, Florida 32202
Telephone: (904) 353-0211
Facsimile: (904) 353-9307

*Attorneys for Plaintiff JEA*

OFFICE OF GENERAL COUNSEL

By: */s/* Jacob J. Payne

Jacob J. Payne
Assistant General Counsel
Fla. Bar No. 0639451
jpayne@coj.net
Garelick@coj.net
Tiffiny Douglas Safi
Assistant General Counsel
Fla. Bar No. 682101
tsafi@coj.net
kmoran@coj.net
117 West Duval Street, Suite 480
Jacksonville, Florida 32202
Phone:  (904) 630-1700
Fax:  (904) 630-1316

*Counsel for the City of Jacksonville, Florida*

#63373333_v6